Move to our fifth argument of this morning. Michelle Giese v. City of Kankakee. It's appeal number 22-2022. Ms. Walters, good morning. Good morning. May it please the court. My name is Kelly Walters. I am the attorney for former Lieutenant Michelle Giese, plaintiff appellant in this case. Today we are asking the court to reverse the district court's decision to grant the defendant's motion for summary judgment. It's our position that a jury should be the one to determine whether the attack on Ms. Giese on October 18, 2018, was a Fourth Amendment violation. Additionally, the jury should hear the disputed facts regarding whether the city was aware of Lieutenant Boyce's history of violence and the actions to cover it up before deciding on the validity of the Monell claims against the city and against the chief of the fire department. Finally, a jury must hear the actions following the attack by both the city and Ms. Giese to determine whether Ms. Giese has a retaliation claim under Title VII. Can I ask you a question about that? Yes. One of the arguments you raise or one of the issues that you raise with respect to statutorily protected activity is you say that after Ms. Giese filed the EEO complaint, she was told that she would have to return to work or she would be fired. That is correct. But the only reference that I could find to that was in the complaint. I found no evidence of that whatsoever in the record. Can you tell me where is the evidence that she would be fired if she didn't return to work? I believe Ms. Giese testified to that in her deposition. I didn't see that. I saw there were several things that happened during that call, but I didn't see any testimony during her deposition that she was told that she would be fired if she didn't return to work. And you're referring to the… I forgot the date of the call, but the call with… Mr. Ellickson? Yeah, the human resources… Yes, I'm sorry. I don't have the exact site. Okay, but if it exists, it would be in her deposition. I believe it would, yes. Okay. On October 18, 2018, Lieutenant Michelle Giese had been a firefighter for approximately 20 years. She and her fellow firefighters were called to an active fire at a senior citizen home at 155 West Mertens. She and five other male firefighters entered the building and approached the apartment with two victims inside, one smoldering. After entering the apartment, Ms. Giese was checking into the kitchen when she felt someone grab her right shoulder from behind. She was forcefully turned around to face defendant Boyce. He proceeded to grab Ms. Giese by the harness that connects her breathing apparatus and lift her off her feet against the wall. He then proceeded to slam her body against the wall three times. Eventually, shortly thereafter, they ended up falling into the next hallway where he proceeded to slam her body into the wall another three times. Ms. Walters, your claim based on that conduct is an excessive force claim, but it's a Monell claim. It's not an individual claim. Correct. It's a Monell claim. And let's assume you can meet the establishing an underlying Fourth Amendment violation for purposes of my question. As you know, in order to pursue a Monell claim, you need to either identify and express policy, a widespread practice, or the decision by a final decision maker that's the force behind this. And I think you're trying to argue there was a widespread practice, not the policy or final decision maker. Is that correct? Actually, I would argue that there was a widespread practice, as in a lack of policy. Well, under the law, those are two separate issues. Oh, I'm sorry. We would be arguing that there's a lack of policy, but we would also argue that there is a policymaker Monell claim because Chief Schultz did have final policymaking authority under the Kankakee Municipal County Ordinance. But the policymaking, I don't think you made that argument below, has to be the driving force behind the conduct. Correct. So what's your evidence that the widespread practice here or the lack of policy was the driving force behind the conduct at work? Well, essentially, it comes down to the fact that Mr. Boyce had several incidences of violence that were remarked upon, much less enacted upon. And do you agree that none of those were instances that occurred at work? I do not agree with that, Your Honor. What's the evidence that there's anything in the record that he reacted violently or subjected somebody to excessive force at work? I believe it was Firefighter Cruz who testified that Defendant Boyce had thrown a helmet across the room one time in the fire station. Additionally, Ms. Giese and another firefighter, whose name is escaping me at the moment, have testified that they've been pushed and shoved when Mr. Boyce was acting violently at a work outing. At a work outing. Outing, so outside of the workplace. Yes. Any other evidence of a widespread practice beyond that? Not prior to Ms. Giese's. It has to be prior, yes. Okay. Thank you. Has your client brought tort claims in state court? Yes. And are they resolved? Are they pending? No, the federal judge released jurisdiction. Okay, and what's the status of the claims, though, now? We'll be taking them to the state court. Okay. So there's nothing right now pending in state court? Correct. After the attack, Defendant Boyce testified that this was in response to the fellow firefighters not following his orders that he served over the radio. However, Firefighters Johnson, Firefighter McCauley, and former Lieutenant Giese all testified that those orders were never given over the radio. After the attack, Defendant Boyce then engaged in a meeting outside of the building, but Ms. Giese was precluded from this. On October 20, 2018, Ms. Giese found out that the union had not been informed of this and informed it herself. Two days following that, Defendant Shult met informally with Ms. Giese, where he told her that she should amend her schedule to avoid her attacker. On October 26, 2018, Boyce was given the opportunity to meet with the union and Chief Shult. At that time, Ms. Giese was not allowed at that meeting. She was not given an audience to the union or Chief Shult in any formal capacity. At this meeting on October 26, the union leaders indicated that they would waive the normal 10-day requirement that punishment be imposed upon a firefighter and allow Chief Shult to do an investigation prior to imposing such discipline. Chief Shult expressed that he did not want this going to the Police and Fire Commission, so he imposed a one-shift suspension at that time. He testified that he reviewed the personnel file. He saw the previous incidents in Mr. Boyce's file, including the order of protection his ex-girlfriend had to take out on him, including the violent encounter he had with the Bradley Police Department involving a gun, including driving under the influence charge that he received. So these points, if they're relevant, they're relevant to the Title VII claim, correct? Yes. Okay. And on the Title VII claim, what's the adverse employment action that you can point to? The adverse employment action in the Title VII claim is Ms. Giese not being given an interview after requesting it with both Mr. Shult and the union in a formal capacity. Additionally, Ms. Giese made a phone call to HR, I want to say on November 5th, where she found out that HR had not been informed of this. It is noteworthy that the HR department for the city of Kankakee, the entire city, not just the Fire Department, consisted of one part-time employee, one female part-time employee. She called that female part-time employee to find out that the HR did not even know about this. Five to ten minutes later, she received an angry phone call from Chief Shult, indicating that she should not have called HR. Following that, she was alienated by management, coworkers telling her that they were told not to speak with her. Additionally, when she was brought back on and put on light duty, she found out that Chief Shult did not tell her immediate supervisors what her light duty assignments were, and she began to be put on duties that she could not perform. And finally, ignoring the advice from her primary therapist that she was not prepared to go back to work, essentially making her work life impossible. I'll reserve the remainder of my time. Okay, very well. We'll hear from a counsel for the city. Good morning, Your Honors, and may it please the court, David Matthews on behalf of the city and Chief Shult. The most important issue for this appeal is what is not at issue in this appeal. Nothing before the court today has anything to do with whether Ms. Kesey was treated differently on account of being female. Page 28 of her briefs, she abandons those claims. Nothing in this appeal has anything to do with whether she has some sort of legal claim against Mr. Boyce. She has a battery, bad pun intended, of state law torts against Mr. Boyce, and the fact that Mr. Boyce has his own counsel and not counsel for the city should tell you everything you need to know about that. The issue isn't even if Ms. Kesey is entitled to some compensation, because as she testified in her deposition at page 25, she was getting $4,400 a month in workers' compensation, and she has a disability pension. The issue is simply does she have a Fourth Amendment claim for a Monell violation, and does she have a retaliation claim, specifically a retaliation claim under Title VII? The answer to both of those questions is an emphatic no. There are a lot of problems with the Monell claim, starting with the fact that there is no underlying constitutional violation. As this court made very clear in the first Midwest Bank case, sometimes it might be called the Michael LaPorta case, Monell is not an independent cause of action. Even what the plaintiff makes or tries to make a big deal about is some sort of alleged conspiracy of silence. It's not an independent cause of action without an underlying constitutional violation. The only possible source here by the plaintiff's argument is the Fourth Amendment, and yet her Fourth Amendment theory presupposes and ignores whether there was a search or a seizure in the first place. Her theory would turn every workplace scuffle between government employees into an excessive force claim simply by virtue of who their employer is. That's not required by the Fourth Amendment's text. It's inconsistent with the case law, and it is just downright illogical. The Torres v. Madrid case is one of the last words, at least, from the Supreme Court about what's a search or a seizure. What that case specifically says is you need an intent to apprehend something more than just the physical force itself, and there's no intent to apprehend here. There's no search or seizure. Remember, Fourteenth Amendment gender discrimination cannot be a basis for a Monell claim because she abandoned those claims. In addition, as Judge Santee pointed out, there's no widespread pattern or practice. There's one incident, and when it comes to these prior incidents of the workplace, Your Honors, I would detect—not detect you, I'm sorry. I would direct you to the short appendix, page 54, where the plaintiff admits as an undisputed fact that there were no prior incidents of workplace violence at the fire department before Mr. Boyce did what he did. Mr. Matthews, let me go back to your Fourth Amendment point. I think the issue with the Fourth Amendment claim is that I totally get the alleged state law tort claims. The difficulty I have with the Fourth Amendment claim is when Lieutenant Boyce engages in that activity, that conduct, very troubling set of allegations. It's difficult to see him acting as a state actor, right? The Fourth Amendment doesn't regulate private conduct, as you know, that way, right? So he's not acting—I know he's a firefighter, but he's not acting in a firefighting or law enforcement capacity when he engages in conduct that's so ultra-virous like that. I think that's a very good argument, and I would remind Your Honor and your fellow panelists that you can— I'm sorry, Judge, I didn't mean to interrupt you. It just seems to me that it's not—I think it's a very difficult claim to say she's not seized, okay, in any kind of fair understanding of the term. There's just no Fourth Amendment activity here because it's not state action that he's engaged in. I think you could certainly— Maybe it may very well be unlawful conduct. Well, if everything that Ms. Giese says is true, it may well be a battery under Illinois law. Again, Mr. Boyce has his own lawyer, and I can't speak to that. You could certainly say that it's not state action and that Mr. Boyce is acting out of just a private ill temper, and I would remind Your Honors you can affirm based on any reason supported by the record. While the plaintiff has to preserve her arguments— And then you've still got—then you've got to take it into the Monel world, right? Which is where I was going next, and as Judge St. Eve pointed out, the plaintiff did not, in fact, make a final policymaker argument. She waived that argument after I pointed out that there is an Illinois statute saying the Board of Police and Fire Commissioners is the final policymaker. She had no response, and that's a waiver. One last thing with respect to the Fourth Amendment argument, and you could go either way. Is it state action? I mean, is he trying to further the firefighting? Maybe. But even though Ms. Giese was grabbed, I would argue that under Torres v. Madrid, she's not seized within the meaning of the Fourth Amendment. There's no attempt to apprehend her beyond the physical contact itself. It's kind of similar to the Blake v. Regan district court case that I cited. But there's no pattern or practice. There's no final policymaker, and there's no official policy because Mr. Boyce's actions were against policy. He got discipline. Now, as the deposition testimony, some of his fellow firefighters thought he shouldn't have been disciplined at all. Some thought the discipline was way too light. Maybe there was someone who actually, like the Goldilocks, thought it was just right. I don't know. Is there any remedy for that? There is no federal constitutional remedy. Is there any remedy for Ms. Giese to challenge the discipline imposed? Not that I'm aware of. There's always possible that there's something under the union contract, but any rights that Ms. Giese would have would be under the union contract because she's a union employee. I don't think so, but I can't be certain. What I can be certain of is that nothing in the federal constitution or Title VII gives an employee a legal interest in the discipline given to another employee. As to that retaliation claim, most of what the plaintiff is arguing is retaliatory predated her protected activity. Her protected activity was filing an EEOC claim. She argues in her opening brief that it was filing a workers' comp claim, and she says that this court has decided that. In my response, I pointed out that the cases she cited are district court cases. They don't decide that issue at all, and in fact, a number of courts have gone the other way, and the response to that from the plaintiff is just simply silence. So her only protected activity is the EEOC brief. We've never addressed the workers' compensation claim one way or the other, correct? As far as I can tell, Your Honor, that is correct. Lower courts have said that workers' compensation, I should say federal district courts have said that it is not a Title VII protected activity. It might be under the FMLA. It might be under state statute, but not under Title VII, and there is very good logical, I would say textual reasons why it shouldn't be because the retaliation statute is specific to Title VII. The only thing that happened after her EEOC claim is she was asked to go back to work to do what two PhD psychologists, including one selected by her therapist, said she could do. Now, the plaintiff said at the very end of her argument that she was required to do tasks when she came back that she couldn't do, but in the plaintiff's, Ms. Giese's, deposition, and I'll direct you to pages 185 to 188, which I cite in my brief, she actually admitted the opposite. She admitted she was never required to do something after telling her supervisor that she couldn't do it. The only argument the plaintiff could make to try to push that retaliation timeline forward and salvage her claim would be to say that talking to HR was protected activity, and she cites some cases about that, and certainly talking to HR can be protected activity, but only if someone says specifically that they are being discriminated against or mistreated on account of their gender or some other Title VII capacity. Generally, going to HR and saying that it's unfair, I don't like the way this is going, doesn't trigger Title VII's retaliation. Well, didn't she say more than that? Didn't she say, look, why am I the one that has to change my schedule but not him? She may very well have said that, but that's not sufficient to say that she's being treated unfairly on account of being female. That doesn't put an HR person on notice of a Title VII retaliation claim. It's just a general workplace grievance. Okay, thank you, Mr. Matthews. Ms. Walters? I'd like to initially address... Go ahead. You've got a minute. Go ahead. I'd like to initially address counsel's misstatement about the Fourth Amendment claim here. In his brief, he relies upon cases for a show of authority of intent to apprehend, none of which are analogous to this case. The Torres v. Madrid case did not indicate one needs to apprehend. The issue in that case was whether an attempt to apprehend but failure to apprehend can be a seizure under the Fourth Amendment. Additionally, the McCoy v. Harrison case, which Mr. Matthews relies on heavily, additionally, is not analogous to this case. In both of those cases, excuse me, in the McCoy case, the victim's freedom was not restrained. And that is why the court decided it was not a Fourth Amendment seizure. In the other three cases, one out of D.C., one out of... The other two out of district courts, one being Illinois, one being Oregon, are also distinguishable. Each one of these cases, the victim was not restrained. One was a genital grabbing. Actually, two were a genital grabbing. And the other one was a bystander on a subway. None of them are analogous. In this particular case, not only was Ms. Giese being held against a wall, but she was lifted off the ground. She was absolutely restrained under the Fourth Amendment. Okay. Very well. Thank you. Thank you. Thanks, Ms. Walter. Mr. Matthews, thanks to you as well. We'll take the appeal under advisement.